# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dianna L. B., | Case No. 19-cv-2561 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | |

Karl E. Osterhout, Osterhout Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, PA 15139 & Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 420, Minneapolis MN 55401 (for Plaintiff); and

Kizuwanda Curtis, Social Security Administration, Office of the General Counsel, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I.   INTRODUCTION

Plaintiff Dianna L. B. challenges Defendant Commissioner of Social Security's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and D. Minn. LR 7.2. This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's motion.

## II.   BACKGROUND

### A.  Procedural History

Plaintiff filed an action for DIB on November 30, 2016, alleging a disability onset date of October 20, 2016. Plaintiff alleged the following impairments: traumatic brain injury, right eye blindness, anxiety, and depression. Plaintiff was found not disabled on February 9, 2017. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 28, 2019 and, on February 27, 2019, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied his request for review. Plaintiff now seeks review by this Court.

### B.  Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the severe impairments of traumatic brain injury in 2000, persistent depressive disorder, specific anxiety disorder, and carotid arterial disease and ischemic optic neuropathy with right eye vision loss. (Tr. 12). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 13-14). The ALJ considered Listings 11.18 (traumatic brain injury), 2.02 (loss of central vision acuity), 2.03 (contraction of the visual fields in the better eye), and 2.04 (loss of visual efficiency or visual impairment in the better eye), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive compulsive disorders) (Tr. 13-14). Following this, the ALJ found Plaintiff to have the

residual functioning capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [N]o climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights or moving mechanical parts; she must avoid work where depth perception and field of vision are required for the performance of the job; and she is limited to simple routine, and repetitive tasks that are not at a production rate pace such as assembly line work.

(Tr. 16). The ALJ then concluded Plaintiff had no past relevant work; that she was an individual of advanced age on the date last insured; and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21). In particular, the ALJ determined that Plaintiff could work as a laundry worker and sealing machine operator. (Tr. 22). Accordingly, the ALJ found that Plaintiff was not disabled since October 20, 2016. (Tr. 22).

## III.   ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1)(E), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less" than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or

her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)). In general, the burden of proving the existence of disability lies with the claimant. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing

*Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (quotation omitted).

### B.  Administrative Record

For several years, Plaintiff has been treated by psychologist Leah Holmes for traumatic brain injury, Major Neurocognitive Disorder, and Major Depressive Disorder. (Tr. 510). In January 2015, Plaintiff reported progress managing her anxiety and coping with stresses. (Tr. 513). A few weeks later, she reported an "increase in symptoms," but an improved mood and more consistent energy. (Tr. 517-18). At an appointment shortly after that, she displayed a pleasant mood; exhibited logical and clear thought processes; and demonstrated good insight and judgment. (Tr. 521-22). Plaintiff continued to exhibit similar behavior at subsequent appointments with Holmes, which occurred up until her hearing. (*See, e.g.*, Tr. 525-26; 529; 534; 537; 541; 545-46; 553-54; 557; 561; 565; 569; 573; 577; 581-82; 585; 589; 593, 587, 603, 607, 612, 617, 622, 627, 638, 657, 668, 682, 704, 793, 915, 927). She also, however, displayed an impaired memory, decreased cognitive functions, and migraines. (*See, e.g.*, Tr. 557-58; 562; 565-66; 568-69; 574; 577;

5

590, 594, 597, 603, 607, 613, 618, 623, 627, 638, 658, 668, 682-83, 704-05, 793, 927).
Plaintiff indicated that she did some volunteer work and that she could function well for
only short periods in a day. (Tr. 633). She continued to work on coping skills to help her
with anxiety and difficulty sleeping. (Tr. 653). She also moved to a new apartment and
worked on her parents' estate during this time. (Tr. 678, 683). She also spent time playing
video games and browsing the internet. (Tr. 736). Plaintiff also reported that she tried a
few part-time consulting jobs but had great difficulty "maintaining consistent energy and
communication." (Tr. 761).

Holmes ultimately opined that Plaintiff could not sustain competitive employment.
(Tr. 718). Holmes indicated that, though Plaintiff could perform at a high level for short
periods of time, Plaintiff could not complete an eight-hour workday or miss less than two
or three days a month. (Tr. 718). Holmes stated that Plaintiff's injury would tax her abilities
and result in fatigue, limited concentration, and decreased performance. (Tr. 718). Holmes
indicated that Plaintiff had extreme limitations in her ability to carry out detailed
instructions; maintain attention and concentration for more than two hours; perform
activities within a schedule and maintain regular attendance; and complete a normal
workday and work week. (Tr. 720). Holmes further noted that Plaintiff's abilities to
understand and remember directions was markedly limited, as was her ability to sustain an
ordinary routine without special supervision, work in coordination with others without
being distracted, and respond to changes in the work setting. (Tr. 720).

In July 2015, Plaintiff saw psychiatrist Dr. Kathryn Lombardo for treatment related
to persistent depressive disorder and traumatic brain injury secondary to closed head injury

in 2000. She denied depression but reported significant stress related to her finances and the recent passing of her mother. (Tr. 475). She further reported difficulty with sleep onset, but stated her concentration was not impaired. (Tr. 475). Plaintiff was alert and oriented; maintained good eye contact; and showed no evidence of active psychoses or hypomania. (Tr. 475). Her mood appeared to be mildly dysphoric. (Tr. 475).

In September 2015, Plaintiff reported a stable mood and "acknowledged mild anhedonia and depressive symptoms." (Tr. 473). Her sleep was adequate, but her concentration remained impaired. (Tr. 473). She was alert and oriented; maintained good eye contact; appeared euthymic; and showed no evidence of active psychoses or hypomania. (Tr. 473).

Plaintiff saw Dr. Lombardo again in February 2016. (Tr. 471). At that appointment, Dr. Lombardo indicated that Plaintiff had not demonstrated the ability to sustain full time employment since her head injury. (Tr. 471). Plaintiff denied depressive symptoms, but indicated her sleep and concentration were variable. (Tr. 471). Plaintiff was alert and oriented; maintained good eye contact; and showed no evidence of active psychoses or hypomania. (Tr. 471). Her mood, however, appeared to be mildly dysphoric. (Tr. 471).

Plaintiff again saw Dr. Lombardo in July 2016. (Tr. 464). Plaintiff reported stable mood and denied depressive symptoms. (Tr. 464). Plaintiff indicated her sleep and concentration were stable and denied hopelessness and suicidal thoughts. (Tr. 464). She was alert and orientated; maintained good eye contact; appeared euthymic; and presented no evidence of active psychoses or hypomania. (Tr. 464). Similar findings were made at an August 2016 appointment. (Tr. 445).

Plaintiff also saw Dr. Lombardo in November 2016. Plaintiff again reported a stable mood and denied depression. (Tr. 433). She admitted to chronic difficulty with sleep; adequate appetite; and impaired concentration. (Tr. 433). Plaintiff again was alert and orientated; maintained good eye contact; appeared euthymic; and showed no evidence of active psychoses or hypomania. (Tr. 433). Similar observations were made at a February 2017 appointment. (Tr. 690). Dr. Lombardo ultimately opined that Plaintiff had experienced chronic memory impairment secondary to a traumatic brain injury and that Plaintiff would require unscheduled work breaks during an eight-hour workday and might miss more than three days per month as a result of her impairments. (Tr. 693-94). Dr. Lombardo indicated that Plaintiff had marked limitations in her ability to remember work-like procedures and locations; understand and carry out detailed instructions; make simple work-related decisions; and work in close proximity to her co-workers and the general public. (Tr. 696). Dr. Lombardo further indicated that Plaintiff had extreme limitations in her ability to maintain attention and concentration for more than two hours and perform activities with a schedule and maintain regular attendance. (Tr. 696). She largely reaffirmed these opinions in a January 2019 letter. (Tr. 938).

At the January 2019 hearing, Plaintiff testified that she had not worked since 2013, but that she had worked for several years before then. (Tr. 36-38). She indicated that because of "neurological fatigue," she could not sustain a full-time job. (Tr. 38). She further stated that she had trouble concentrating, following conversations, and remembering what she was supposed to be doing. (Tr. 39). As a result, she needed to write things down or tape record an appointment in order not to forget them. (Tr. 43). She also

could not see through her right eye but was able to drive during the day. (Tr. 4041). Plaintiff typically went to the grocery store, to appointments, and occasionally socialized with friends. (Tr. 45-46). She also prepared her own meals and cleaned her apartment. (Tr. 46-47).

### C. The ALJ's Findings Regarding Plaintiff's RFC Are Not Supported By Substantial Evidence

Plaintiff argues the ALJ's findings as to her RFC are not supported by substantial evidence. A claimant's RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations. 20 C.F.R. § 404.1545. The Commissioner's determination of a claimant's RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant bears the burden to establish her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

Plaintiff first takes issue with the ALJ's decision to place little weight on the opinion evidence of her treating providers. Under 20 C.F.R. § 404.1527(c) or § 416.927(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. If a treating source's medical opinion on the nature and severity of a claimant's impairments

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given more weight than from other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1502(a), 416.902(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). Additionally, "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

Regarding the opinion of Dr. Lombardo, the ALJ gave little weight to the fact that Plaintiff would be absent for more than three days a month and would require frequent unscheduled breaks, explaining this conclusion was reserved for the Commissioner. The ALJ further explained that Dr. Lombardo's opinion was "not internally consistent," as her Global Assessment of Functioning ("GAF") score was moderate, and her mental status examinations showed only benign findings, which were consistent with the mental status examination findings. (Tr. 20). The ALJ also noted that Dr. Lombardo's attribution of Plaintiff's fatigue to her traumatic brain injury was not consistent with her performance on

neurophysiological testing or with a report that indicates Plaintiff had poor sleep hygiene. The ALJ thus found that Dr. Lombardo's opinion was based more on Plaintiff's subjective complaints and not on the objective evidence.

The ALJ further found that Holmes's conclusion that Plaintiff had marked to extreme limitations in mental functioning was inconsistent with the overall record, which show that Plaintiff "had only very mild findings on mental status examinations." (Tr. 20). In addition, the ALJ noted that though Holmes believed Plaintiff's ability to sustain high levels of cognitive demand was limited, the ALJ had taken that factor into account by limiting Plaintiff's RFC to simple, routine, and repetitive tasks.

The ALJ's findings as to the treating providers' opinion are unsupported by substantial evidence. In discounting Dr. Lombardo's opinion, the ALJ first relied on Plaintiff's GAF score. But GAF scores have no direct correlation to the severity standard used by the Commissioner. *Reed v. Comm'r, Soc. Sec. Admin.*, 750 Fed. Appx. 506, 2019 WL 421739, at *1 (8th Cir. Feb. 4, 2019) (per curiam). Those scores represent "a snapshot in time" and cannot be used in isolation from the rest of the evidence to make a disability decision. *Vue v. Berryhill*, No. 17-cv-4110, 2018 WL 4054109, at *3 n. 3 (D. Minn. Aug 24, 2018). Thus, Plaintiff's GAF score provides little reason for the ALJ to discount Dr. Lombardo's opinion.

The ALJ acknowledged the limitations of GAF scores, but indicated they were generally consistent with other mental status examination findings from the doctor. The ALJ did not, however, cite to specific records that and explain how those records were consistent with Plaintiff's GAF score. The "disability determination process is not an

adversarial process." *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020). Just as the claimant has the burden to prove her case, the Commissioner has a duty to develop the record to permit meaningful review on appeal. *Id.* Generic references to mental status examinations are insufficient to do so, particularly when, upon the Court's review, those records show functional limitations that are both consistent and inconsistent with Plaintiff and her treating physician's assessment of Plaintiff's RFC. In such cases, the Court is unable to review whether the ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence because the ALJ has not addressed or resolved the differences within those statements. *See id.* ("[T]he failure to address or resolve the differences between the medical opinions . . . leaves us unable to determine the permissibility of the Commissioner's RFC determination.").

The same analysis applies to the ALJ's findings regarding Plaintiff's sleep hygiene. The ALJ also gave less weight to Dr. Lombardo's opinion because the doctor attributed Plaintiff's fatigue to her traumatic brain injury, while a report indicated that Plaintiff had poor sleep hygiene. The ALJ, however, overstates Dr. Lombardo's opinion. Dr. Lombardo did not attribute Plaintiff's fatigue entirely to her brain injury, but merely stated that it contributed to her fatigue. (Tr. 938). Furthermore, throughout her time treating Plaintiff, Dr. Lombardo repeatedly noted that Plaintiff suffered fatigue, even when her sleep was only mildly impaired. (*See, e.g.*, Tr. 905). The ALJ did not address these records. Because this factor played a large part in the ALJ's decision to reject the opinion of a treating physician, the ALJ was required to develop the record more on this issue to permit meaningful review.

The ALJ's decision to discount Dr. Lombardo's opinion based on neurophysiological testing is also without substantial evidence, as that testing occurred several years before the time period relevant to Plaintiff's claim. Though records created outside the relevant time period may be relied on if they also provide evidence Plaintiff's condition during the adjudicated period, *Stimpson v. Berryhill*, No. 17-cv-824, 2018 WL 1440336, at *4-*5 (D. Minn. Mar. 22, 2018), the ALJ provided no explanation as to why the neurophysiological was evidence of Plaintiff's condition today. Nor can the Court ascertain such a reason based on the record before it.

Finally, the ALJ rejected Holmes's opinions as inconsistent with the overall record. Again, however, the ALJ did not explain how he assessed the overall record or identify why he rejected certain pieces of evidence in favor of others. Furthermore, the ALJ noted that by limiting Plaintiff's RFC to simple, routine, and repetitive tasks, he accounted for Holmes's belief that Plaintiff had limitations in her ability to sustain high levels of performance on tasks that require high levels of cognitive demand. But Holmes did more than opine Plaintiff was unable to complete tasks that required high levels of cognitive demand. She also indicated that Plaintiff was simply unable "to perform accurately or interact effectively" after a period of time. Thus, the limitations in the ALJ's RFC do not account for all the limitations proposed by Holmes.

For all the reasons above, the ALJ's decision to reject the two treating physician opinions as inconsistent with the record are not supported by substantial evidence. The Court will therefore remand the matter for reconsideration.[1]

## IV.   CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment (ECF No. 16) is **GRANTED**;

2.   Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**;

3.   The Commissioner's decision is **VACATED** as to steps four through five; and

4.   This case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: August 10, 2020                              _____*s/ Tony N. Leung*_____
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   District of Minnesota

                                                   *Dianna L. B. v. Saul*
                                                   Case No. 19-cv-2561 (TNL)

---

[1] Plaintiff raised additional claims for error, including that the underlying record supported the assessment of additional work-preclusive limitations and that the ALJ failed to consider Plaintiff's work history in assessing her credibility. Because the Court remands for reconsideration beginning at step four, the Court need not address these arguments, but simply notes that the ALJ should consider both issues following reconsideration of the treating physician opinions. Of course, Plaintiff's lengthy work history should likely be a positive factor in weighing her credibility. *See* 20 C.F.R. § 404.1529(c). *Daniel C. v. Saul*, No. 18-cv-2695 (TNL), 2019 WL 6894436, at *11 n. 4 (D. Minn. Dec. 18, 2019) .